**NATIONAL PARALEGAL INSTITUTE, INC., Appellant,**

v.

**Richard BERNSTEIN, Appellee.**

**No. 84–681.**

District of Columbia Court of Appeals.
Argued April 12, 1985.
Decided Sept. 27, 1985.

John Scott Price, for appellant.

Roger D. Luchs, Washington, D.C., for appellee.

Before NEBEKER and MACK, Associate Judges, and REILLY, Chief Judge, Retired.

NEBEKER, Associate Judge:

The instant appeal involves an action commenced by Richard Bernstein against National Paralegal Institute, Inc. (NPI) for unpaid rent for premises formerly leased by NPI from Bernstein. The action was instituted in 1983 and service was made on the Superintendent of Corporations, due to the 1978 revocation of NPI's certificate and articles of incorporation. The Superintendent mailed a copy of the summons and complaint to the registered office listed with her office, but NPI failed to answer and a default judgment was entered. NPI subsequently moved to dismiss the complaint, to vacate the default judgment, and for attorneys' fees, claiming that it had not been served properly. The trial court denied these motions, and NPI appealed. Finding no abuse of discretion, we affirm.

I

NPI, a nonprofit corporation, leased office space from Bernstein beginning in 1972. In the fall of 1982, the parties entered into their last lease, for the period December 1, 1982, through November 30, 1985. Shortly thereafter NPI lost its funding and contends that it so informed appellee's agent and vacated the premises on March 15, 1983. Bernstein avers that NPI vacated on July 30, 1983, and therefore owes rent for the months of March through July, when the premises were relet. In August 1983, appellee's lawyer sent William Fry, NPI's former executive director, a letter demanding the unpaid rent. Fry apparently responded immediately, denying that NPI owed Bernstein any money.

Appellee subsequently filed suit and served the Superintendent of Corporations, who mailed process to NPI at Georgetown University Law Center. The Law Center was the address of one of the original incorporators and apparently the last address for the corporation on file with the Superintendent. Bernstein served the Superintendent because, in the course of preparing the suit, he discovered that NPI's certificate and articles of incorporation had been revoked in September 1978, due to its failure to file annual reports and pay all fees due in 1977 and 1978. Fry, who claims not to have known anything about the revocation, was never notified of the suit, and no answer was filed. In December 1983, appellee obtained a default judgment against NPI for $6,849.49.

In January 1984, Fry was informed of the default judgment and hired counsel for NPI, who moved to dismiss the complaint for insufficiency of process, to vacate default judgment, and for attorneys' fees. The trial court denied these motions on April 13, 1984.

II

Although this issue was not raised by the parties, we must first determine the effect of the revocation of NPI's corporate status to ascertain whether a case or controversy

exists for our consideration. Following the voiding of its articles of incorporation in 1978, NPI lost its right to conduct business as a corporation. D.C.Code §§ 29–586 and 587(d) (1981). Thereafter, the corporation remained a legal entity for a three-year period for the sole purpose of any actions or suits filed against it. *Id.* § 29–587(d) (1981). Thus, when Bernstein and appellee signed the final lease in 1982 and when Bernstein filed suit in 1983, the corporation did not exist.

On February 15, 1985, however, the Superintendent of Corporations reinstated NPI's corporate charter. D.C.Code § 29–591 (1981) provides that following such a reinstatement, a "corporation shall have such powers, rights, duties, and obligations as it had at the time of the issuance of the proclamation [of revocation] with the same force and effect as to such corporation as if the proclamation had not been issued." Accordingly, we hold that the reinstatement of NPI's corporate charter applies retroactively to restore its existence for the maintenance of this action. *Truit v. Miller*, 407 A.2d 1073, 1081 (D.C.1979). To hold otherwise would be to allow NPI to use its failure to file annual reports and pay fees as a way of evading the responsibility—the payment of rent—it assumed in signing the lease. *Id.*

### III

Turning to NPI's motions to dismiss and to vacate the default judgment, we note that the grant or denial of such motions is within the sound discretion of the trial court. *See, e.g., Joseph v. Parekh*, 351 A.2d 204, 205 (D.C.1976). Thus, this court is not required to determine the merits of the underlying action but only to decide whether there has been an abuse of discretion. *Id.* Although NPI filed two separate motions, the gravamen of its contention is the same in each—that service of process on the Superintendent of Corporations was insufficient. We disagree.

Super.Ct.Civ.R. 4(d)(3) sets out the procedure to be followed in obtaining service of process upon a domestic corporation. In so doing, the statute provides a plaintiff with the choice of serving either "an officer, a managing agent or general, or ... any other agent authorized by appointment or law...." *Id.* Further, D.C.Code §§ 29–509 and 511 (1981) require each domestic, nonprofit corporation to maintain a registered agent in the District upon whom process may be served.

In this case, NPI lost its right to conduct business as a corporation, even for the purposes of defending against a lawsuit, in 1981. D.C.Code § 29–587(d) (1981). When it ceased to have a legal existence entirely, NPI could no longer have had officers.[1] Further, it nowhere alleges that Fry was ever its registered agent. Accordingly, Bernstein was left with no alternative than to comply with D.C.Code § 29–511(b) (1981), which provides that "[w]henever a corporation shall fail to appoint or maintain a registered agent in the District ... the Mayor shall be an agent of such corporation upon whom any such process ... may be served." The record reflects that Bernstein served the Superintendent of Corporations with duplicate copies of process, one of which was mailed to the Law Center and signed for by a "B.M. Greenfield."

As Bernstein complied fully with the pertinent statutes and court rule, none of which imposed any duty upon him to serve Fry individually, we hold that service of process was properly effectuated. Accordingly, the trial court did not abuse its discretion in denying appellant's motions.[2]

*Affirmed.*

---

1. NPI refers to Fry as its president in one portion of the record and as executive director in another.

2. We need not consider NPI's motion for attorneys' fees, in view of our holdings for appellee on the motions to dismiss and vacate the default judgment.